# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

_____

UNIQUE SPORTS PRODUCTS, INC.

    Plaintiff,

v.                                                                          Civil No. 09-CV-660-TWT

FERRARI IMPORTING COMPANY

    Defendants.

_____

## FERRARI IMPORTING COMPANY, INC.'S PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Ferrari Importing Company hereby submits its proposed findings of fact and conclusions of law.

**I.**    **Findings of Fact**

### Background

1. Both Unique and Ferrari manufacture and market specialty sporting goods accessories, including overgrip tape (also called overwrap grip) and gauze tape products for racquet sports.

2. Overgrip can be distinguished from gauze tape because overgrip is thicker, more moisture absorbent, and softer.

3. Overgrip also generally requires the use of an adhesive strip (called "finishing tape") to secure the end of the overgrip to the racquet handle because overgrip is not coated with adhesive.

4. In contrast, gauze tape is porous, woven, less moisture absorbent, rougher feeling, and coated on both sides with an adhesive.

5. Gauze tape does not provide much, if any, cushioning.

6. Both Unique and Ferrari sell overgrip and gauze tape in various colors, including different shades of blue, and sell their products in sporting goods stores, the sporting goods sections of mass merchandise stores, and through the internet.

## Unique's Trademark Registration

7. Unique is the owner of U.S. Reg. No. 2,428,076 ("the LIGHT BLUE color mark") for the color light blue for grip tape for sports racquets.

8. In its application for registration of the LIGHT BLUE color mark, Unique sought to register a trademark to protect the light blue color and appearance of its Tourna Grip product.

9. In connection with its application for registration of the LIGHT BLUE color mark, Unique submitted a specimen of the trademark it sought to register. The specimen was a sample of the Tourna Grip product.

133686.00601/12101389v.1

10. In a prior case before this Court, *Unique Sports Products, Inc. v. Babolat VS*, 1:02-cv-2947-CAP, Unique agreed on the record that the scope of its trademark was limited to only twelve colors from the Pantone® Color Matching System, PMS 2716 U, 7451 U, 7452 U, 7453 U, 7454 U, 7455 U, 7456 U, 2718 U, 2727 U, 659 U, 660 U, and 542 U.

11. Unique settled its case with Babolat and agreed that its trademark would be adequately protected so long as Babolat agreed not to use these same twelve shades of blue in connection with overwrap grip products.

## Secondary Meaning of the LIGHT BLUE Mark

12. There is no evidence that consumers associate the LIGHT BLUE Mark with a single source for tennis racquet grip tape products.

## Ferrari's Sales of Blue Tape Products

13. Ferrari sells overwrap grip, including in shades of light blue, and has done so since at least as early as 1988.

14. Ferrari currently sells the following grip tape products in shades of blue: (1) gauze tape; (2) Pro Wrap; (3) DermaGrip; (4) Supreme Overgrip; and (5) Gamma Grip 2.

15. Gauze tape is not an overwrap grip.

- 3 -

**Third-Party Sales of Blue Tape Products**

16. Unique acquiesced to Babolat's use of any shade of blue it chooses, except for twelve, in connection with overwraps.

17. Babolat currently sells at least eight different types of overgrip in at least nine different shades of blue, none of which violate Babolat's settlement agreement with Unique.

18. Unique sells Head the exact same material that it sells as Tourna Grip, which Head subsequently sells as Agassi Pro Team Grip.

19. Until recently, the Agassi Pro Team Grip product was sold in packages that made no reference to being made by Unique or Tourna Grip.

20. Through Unique or its predecessor in interest Consolidated Service Group, Tourna Grip has been available in various colors other than light blue since its introduction through the present.

21. In addition to Ferrari at least 13 other companies have offered blue overwraps over the years including Unique, Forten, Alpha, Wilson, Prince, Pacific, Babolat, Winn, Tecnifibre, Gripsy, Player's Choice, Giant Goal, Ming Hsing, and High Cedar.

22. In addition to Tourna Grip, Unique sells two other overwrap products – WHATAGRIP and SOFTGRIP – in light blue since before its acquisition of Tourna Grip. Unique also sells gauze tape in blue.

**Confusion Between the Marks**

23.     There are no instances of actual confusion between Ferrari's products and Tourna Grip.

**II.     Conclusions of Law**

**Trademark Infringement and Unfair Competition**

1.      All three of Unique's trademark infringement counts – Count I for trademark infringement under § 32 of the Lanham Act; Count II for false designation of origin under § 43 of the Lanham Act; and Count IV for violation of Georgia's Uniform Deceptive Trade Practices Act – are governed by the same standards.  *Alven Consumer Healthcare, Inc. v. DrFloras, LLC*, No. 1:09-cv-75-TWT 2010 U.S. Dist. LEXIS 9366, *3-4; 13-14 (N.D. Ga. Feb. 4, 2010) (Thrash, J.).

2.      For each of these claims, Unique must show:  (1) that it has valid trademark rights in the alleged LIGHT BLUE color mark; and (2) that Ferrari has adopted a mark that is the same or confusingly similar such that consumers are likely to confuse the two marks.  *Dan Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (*citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)).

## Unique Must Overcome a High Burden to
## Show that its LIGHT BLUE Color Mark is Valid

3. A trademark is "any word, name, symbol, or device, or any combination thereof" used "to identify and distinguish…goods." 15 U.S.C. § 1127.

4. To function as a trademark, the mark must be sufficiently distinctive so as to indicate a single source. Certain types of trademarks are inherently distinctive, but marks that are merely descriptive cannot become trademarks unless they have acquired distinctiveness by developing secondary meaning. *Dan Tana*, 611 F.3d at 773-74.

5. Colors are always treated as descriptive marks and, as such, can only function as trademarks when they have acquired secondary meaning. *Unique Sports Prods., Inc. v. Babolat VS*, 403 F. Supp. 2d 1229, 1234 (N.D. Ga. 2005) (Parnell, J.) (citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163 (1995)).

6. A mark has developed secondary meaning with regard to a certain product when its primary significance in the minds of consumers is the single source of that product. *Id.* at 1236 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11 (1982)).

7. Moreover, for Unique's LIGHT BLUE color mark to be enforceable against Ferrari, Unique must show that the LIGHT BLUE color mark acquired

secondary meaning *before* Ferrari began using the same or a similar color.  *Id.* (citing *Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 800 (11th Cir. 2003)).

8.      Unique has the burden of "sustaining a high degree of proof to establish secondary meaning in its color mark."  *Id.*[1]

### Unique Must Show that Ferrari's Sale of Blue Grips is Likely to Confuse Consumers

9.      If Unique's LIGHT BLUE color mark is valid, Unique must also prove that there is a likelihood of confusion between the LIGHT BLUE color mark and the overwrap products Ferrari sells.

10.     Analysis of likelihood of confusion requires consideration of a number of factors, including:  (1) the strength of the mark; (2) similarity between the marks; (3) any evidence of actual confusion; (4) the alleged infringer's intent; (5) similarity of the products; (6) similarity of the outlets and purchasers; and (7) similarity of advertising media.  *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

---

[1] Although typically a federal registration creates a rebuttable presumption of secondary meaning, Unique is not entitled to this presumption here because Ferrari's use of similar colors began prior to the issuance of the registration.  *See*, *Unique Sports Prods.*, 403 F. Supp. 2d at 1236-37.

11.     Of these factors, the two most important are the strength of the mark and any evidence of actual confusion.  *Alven Consumer Healthcare, Inc.*, 2010 U.S. Dist. LEXIS 9366 at *12 (citing *Frehling Enters.*, 192 F.3d at 1335).

### Unique's Trademark is Invalid and Subject to Cancellation Because it Has not Acquired Secondary Meaning

12.     In the Eleventh Circuit, courts consider a number of different factors to determine if a mark has acquired secondary meaning, including:  "(1) the length and manner of use, (2) the nature and extent of advertising and promotion, (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the trademark and the plaintiff's business, and (4) the extent to which the public actually identifies the trademark with the plaintiff's goods and services."  *Unique Sports Prods.*, 403 F. Supp. 2d at 1237 (citing *Gift of Learning*, 89 F.3d at 800).

13.     Here, although Unique has demonstrated that it and its predecessor have used the same blue color for Tourna Grip for a long time, there is insufficient evidence of the nature and extent of the advertising and promotion or of Unique's efforts to promote a conscious connection in the public's mind to support a finding of secondary meaning.  Finally, the fourth factor weighs heavily against a finding of secondary meaning.

14. Unique's own conduct, coupled with extensive third party use of the color blue for overwrap makes it all but impossible for the public to actually identify the LIGHT BLUE color mark with a single source.

15. Unique has failed to produce and cannot show any evidence to directly demonstrate that consumers actually associate the LIGHT BLUE color mark with Tourna Grip or Unique.

16. Moreover, Unique has acquiesced to numerous other companies use of various shades of blue, including light blue in connection with overwraps, even going so far as to permit one company, Head, to sell the <u>exact same product</u>, packaged and branded as a Head product.

17. Under its settlement agreement with Babolat, Unique acquiesced to Babolat's use of any shade of blue it chooses, except for twelve, in connection with overwrap.

18. With regard to Head, Unique sells Head the exact same material that it sells as Tourna Grip, which Head subsequently sells as Agassi Pro Team Grip.

19. And, until recently, the Agassi Pro Team Grip product was sold in packages that made no reference to being made by a Unique or Tourna Grip.

20. In addition Unique had, since the early 1980's and until very recently, sold Tourna Grip in a rainbow of colors other than light blue, including black and grey.

133686.00601/12101389v.1

21. In addition to the uses of light blue that Unique sanctions in the market place, numerous other companies use or have used shades of blue, including light blue, for overwrap for years.

22. In addition to Ferrari (under the Gamma brand), which has used blue since the early 1980's and light blue since 1988, at least 13 other companies have offered blue overwrap including Unique[2], Forten, Alpha, Wilson, Prince, Pacific, Babolat, Winn, Tecnifibre, Gripsy, Player's Choice Giant Goal, Ming Hsing, and High Cedar.

23. The uses of light blue by other companies with Unique's acquiescence, including Unique's private labeling of an identical product for Head, combined with the extensive and continuous third-party use of blue, including light blue, and Unique's sale of the same product in other colors make it impossible for consumers to exclusively identify the LIGHT BLUE color mark with Unique.

24. The Court finds that Unique has failed to prove its LIGHT BLUE color mark has acquired secondary meaning. Accordingly, the LIGHT BLUE color mark is invalid and subject to cancellation.

---

[2] In addition to Tourna Grip, Unique sells two other overwrap products – WHATAGRIP and SOFTGRIP – in light blue since before its acquisition of Tourna Grip. Unique also sells gauze tape in blue. Unique Catalog.

### Unique Cannot Enforce its LIGHT BLUE Color Mark Against Ferrari

25. For the LIGHT BLUE color mark to be enforceable against Ferrari, Unique must prove that the LIGHT BLUE color mark acquired secondary meaning before Ferrari began using a similar color.

26. Ferrari began selling overgrip in a color similar to the LIGHT BLUE color mark at least as early as 1988.

27. The Court finds that Unique has failed to prove that its mark acquired secondary meaning prior to 1988.

28. Therefore, even if the LIGHT BLUE color mark were valid, it is not enforceable against Ferrari.

### Ferrari Does Not Infringe Unique's Trademark

29. To determine if there is a likelihood of confusion the Court must balance a number of factors, including: (1) the strength of the mark; (2) similarity between the marks; (3) any evidence of actual confusion; (4) the alleged infringer's intent; (5) similarity of the products; (6) similarity of the outlets and purchasers; and (7) similarity of advertising media. *Frehling Enters.*, 192 F.3d at 1335.

### The LIGHT BLUE Color Mark is Weak

30. The first factor for the Court to consider is the strength of the LIGHT BLUE color mark.

133686.00601/12101389v.1

31. One of the most important factors to consider in determining the strength of a mark is the extent of third-party uses of the same or similar marks.

32. The more third parties have used the same or a similar mark, the weaker the mark and the less protection it deserves. *Id.* at 1336.

33. Here, as discussed above, third party use of blue, including light blue, in connection with overwrap products is rampant, and much of it is either sanctioned by or acquiesced to by Unique.

34. Unique sells or has sold three other overwrap products – Whatagrip, Softgrip, and gauze tape in blue.

35. In addition, Unique acquiesced to the sale of blue overwrap by at least three other companies: Yonex, Babolat, and Head.

36. Beyond the numerous uses of blue that Unique has specifically permitted (and profited from), at least 13 other companies offer or have offered blue overwraps.

37. Lastly, Unique has sold the Tourna Grip product in colors other than blue, further weakening its ability to actually function as a trademark.

38. In view of the rampant third party use, and Unique's own failure to consistently use only the color blue on Tourna Grip, the LIGHT BLUE color mark fails to effectively serve the essential function of a trademark of identifying the goods with a single source. *See* 15 U.S.C. § 1127.

39.     Therefore, the LIGHT BLUE color mark, if valid at all, is a very weak mark entitled to a very narrow scope of protection.

### **There is Very Little Similarity Between the Marks**

40.     Next the Court considers the similarity between the marks. In doing so, the Court looks at the overall impression that the marks make, including considering the manner in which the marks are used. *Unique Sports Prods.*, 403 F. Supp. 2d at 1242 (citing *Frehling Enters.*, 192 F.3d at 1337).

41.     Unique's LIGHT BLUE color mark consists of the single shade of blue of its Tourna Grip product. *Unique Sports Prods.*, 403 F. Supp. 2d at 1234.

42.     In addition to the shade of blue, however, several other features function to give Tourna Grip its own appearance.

43.     Tourna Grip has an apparent speckled appearance, and is always sold with a red finishing tape.

44.     In addition, Tourna Grip is sold in a package bearing the Tourna Grip name prominently.

45.     In contrast to the Tourna Grip product, Ferrari's products all create a very different overall commercial impression, which is readily apparent upon even a cursory review of the products as they are sold.

46.     Ferrari's gauze tape is not an overgrip product. Gauze tape and overgrip do not compete and do not appeal to the same consumers.

- 13 -

47. Because it is so different from overgrip, gauze tape cannot infringe the LIGHT BLUE color mark.

48. Ferrari's gauze tape is a different, darker, shade of blue than Tourna Grip.

49. Ferrari's gauze tape does not have a speckled appearance like Tourna Grip.

50. All of Ferrari's products are sold in packages with the Gamma brand prominently displayed, and all are sold with black finishing tape (except the gauze tape, which is not sold with any finishing tape).

51. In view of all these differences, there is no doubt that consumers can readily identify that Ferrari's products emanate from a different source than the Tourna Grip product.

## There is No Evidence of Actual Confusion

52. Ferrari has been selling blue and light blue overwraps since at least 1988.

53. In over twenty years of co-existing in the marketplace, and despite numerous and repeated complaints from Unique about Ferrari's products, there is not even a <u>single instance</u> of actual confusion between Ferrari's products and Tourna Grip.

## Ferrari's Intent Has Been to Avoid Confusion

54. While a defendant that intentionally adopts a mark to try and benefit from the plaintiff's reputation can strongly support a finding of likelihood of confusion, *see Frehling Enters.*, 192 F.3d at 1340, the situation here is precisely the opposite.

55. Over the years, Unique has contacted Ferrari several times to express Unique's belief that certain of Ferrari's products were too similar to the color Tourna Grip.

56. Each time Unique has done so (including prior to this lawsuit), Ferrari has made changes to address Unique's concerns and to try to obviate even the mere possibility of confusion.

57. On balance, the evidence shows that Ferrari's intent has been to avoid infringement.

## The Remaining Factors

58. As to the remaining factors – the similarity of the products, purchasers, outlets, and advertising media – there is some overlap between Ferrari and Unique, as would be expected between any two competitors. These factors, however, are among the least important. *See Frehling Enters.*, 192 F.3d at 1335.

133686.00601/12101389v.1

### Balancing of the Factors

59. Ultimately, while each of these factors is an important consideration, the "question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Alven Consumer Healthcare, Inc.*, 2010 U.S. Dist. LEXIS 9366 at *12.

60. Here, all of the most important factors, the strength of the mark, evidence of actual confusion, and Ferrari's intent all weigh against finding a likelihood of confusion.

61. Accordingly, balancing the factors demonstrate that there is no likelihood of confusion.

62. Unique's LIGHT BLUE color mark is not valid because it has not acquired secondary meaning with the consuming public and because the use of the light blue on overwrap material is functional. Accordingly, Ferrari respectfully requests that the Court grant summary judgment in its favor and issue an order cancelling Unique's LIGHT BLUE color mark.

Dated:  August 15, 2011						BLANK ROME LLP

										By:   /s/ Joel L. Dion
											Grant S. Palmer
											Timothy D. Pecsenye
											Joel L. Dion
											One Logan Square
											Philadelphia, Pennsylvania  19103
											(215) 569-5500

133686.00601/12101389v.1

        LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC
        Thomas O. Sippel – GBN: 649211
        Attorneys for Defendant
        500 Colonial Center Parkway, Suite 625
        Roswell, GA  30076
        Telephone: (678)206-2500
        Telecopier: (678)206-2507

        Carl A. Ronald
        The Ronald Law Group, LLC
        4960 William Flynn Hwy
        Suite 6, PMB 308
        Allison Park, PA 15101
        Telephone:  (412) 680-5802

        Attorneys for Defendant
        Ferrari Importing Company

133686.00601/12101389v.1

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this pleading has been prepared in compliance with Northern District of Georgia Local Rule 5.1 B.  This pleading has been prepared in Times New Roman 14 point font.

                                            Respectfully submitted,

Dated:  August 15, 2011        /s/ Joel L. Dion

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2011 I filed the foregoing **FERRARI IMPORTING COMPANY, INC.'S NOTICE OF NON-OPPOSITION AND REQUEST FOR SANCTIONS** with the Court and it was served by hand on the following attorneys of record:

> Scott Creasman
> Amanda Hyland
> Jason Randle Curles
> Todd Edward Jones
> Taylor English Duma LLP
> 1600 Parkwood Circle, Suite 400
> Atlanta, Georgia 30339

Counsel for Plaintiff, Unique Sports Products Inc.


/s/ Joel L. Dion

133686.00601/12101389v.1