**IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNIQUE SPORTS PRODUCTS, INC. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil No. 09-CV-660-TWT |
| | : |
| FERRARI IMPORTING COMPANY | : |
| | : |
| Defendant. | : |
| _____ | : |

**UNIQUE SPORTS PRODUCTS, INC.'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

Pursuant to N.D. Ga. Local Rule 16.4(B)21 and this Court's order entered

June 3, 2011, Plaintiff Unique Sports Products, Inc. hereby submits its Proposed

Findings of Fact and Conclusions of Law as follows:

**PROPOSED FINDINGS OF FACT**

A.  **Tourna Grip's Light Blue Trademark**

1.  Plaintiff Unique Sports Products, Inc. ("Unique") manufactures and markets

    sporting goods accessories, including grip and grip tape products for racquet

    sports.  (Testimony of Gene Niksich, hereinafter "Niksich Testimony.").[1]

---

[1] Plaintiff's counsel has extensively discussed the matters herein with Mr. Niksich, and has therefore developed a
good-faith belief as to the anticipated substance of his testimony at trial.

2. In 1992, Unique acquired the Tourna Grip line of sporting products, including its light blue racket grip tape. Niksich Testimony.

3. Tourna Grip is an overgrip product used to wrap the pre-existing grip of a tennis racquet such that additional cushioning and moisture absorption is provided. Niksich Testimony.

4. For 33 years, since 1977, Tourna Grip has been manufactured, marketed and sold in a distinct light blue color.  Niksich Testimony; Joint Exhibit 186.

5. After Tourna Grip had been on the market for 22 years, Unique applied for and was granted a federal trademark registration, during which Unique submitted volumes of evidence regarding its acquired distinctiveness. Joint Exhibits 1 & 186.

6. On February 13, 2001, Unique received a federal trademark registration for the color light blue used for "grip tape for sports rackets."  Joint Exhibit 1.

7. Unique's "Tourna-Grip" product is the best selling racket grip tape in the United States. Niksich Testimony

8. Unique's light blue racket grip tape is used by numerous famous professional tennis players, including Pete Sampras, Andre Agassi, James Blake, Venus Williams, and Maria Sharipova.  Niksich Testimony; Joint Exhibits 186, 205, 206.

9. Both prior to receiving its registration and in the present day, Unique has advertised on television and extensively in tennis magazines.  The advertisements prominently show the light blue color of the Tourna Grip overgrip, including photographs of celebrity tennis professionals using the tape and ads with specific references to "thin, blue Tourna Grip," "The original blue super absorbent non-slip grip," "the original blue grip," and "Blue Tape."  Niksich Testimony; Joints Exhibits 186; 206; 208.

10. Since at least as early as 1999, Unique has advertised Tourna Grip as "Tourna Grip the Light Blue Grip." Niksich Testimony; Joint Exhibit 186.

11. More than $3 million was spent in advertising the Tourna Grip blue overgrip tape products between 1977 and 1999. Niksich Testimony; Joint Exhibit 186.

3

12. A 2011 tennis match aired on the Tennis Channel wherein the sportscasters clearly identified the player as using Tourna Grip, "the light blue grip that doesn't slip."   Joint Exhibit 205.

B. **Evidence of Substantially Exclusive Use**

13. Defendant Ferrari Importing Company (hereinafter "Ferrari") has produced decades-old catalogs in an attempt to show that it and other companies sold light blue grip tape products prior to 2001.  Joint Exhibits 102, 120-128, 134, 136, 140-146, 151-155.

14. However, Ferrari has not produced any physical evidence of the existence of competing light blue grip tape products, nor has it produced any sales figures to show that the sales of such products, if any, were more than *de minimis*.

15.  In fact, Ferrari has been unable to produce any samples of its own grip tape products that it alleges were of a similar light blue color to Tourna Grip.

16. Ferrari has produced a sample of "Agassi Pro Team Grip," which is the same color of Tourna Grip.  Joint Exhibit 114.

17. Agassi Pro Team Grip is made by Unique.  Niksich Testimony.

18. Unique has shown that Agassi Pro Team Grip is primarily an international product with U.S. sales constituting an annual average of less than 1% of Tourna Grip's U.S. sales. Niksich Testimony.

19. Moreover, the packaging of Agassi Pro Team Grip states that it is "made by Tourna Grip," and Unique controls all aspects of the Agassi Pro Team Grip products.  Niksich Testimony; Joint Exhibit 85.

20. Unique has also shown that any third-party use of a similar light blue color on overgrip products was infringing, *de* minimis, and/or quickly halted by Unique's policing efforts.   Indeed, Unique has dutifully policed infringements of its mark, as it rapidly addressed potential infringements by Babolat USA, Golden Set, Prince, Alpha, Forten Corporation, Wilson, ProKennex, Volkl Sport America, Easton Sports, Gosen Racquet Strings,

Kirschbaum Sportartikel, Klipper USA, Sportmaster, Yonex, and Head/Penn.  Niksich Testimony; Joint Exhibit 60.

21. In fact, Unique has filed an action against Ferrari before, which resulted in a final judgment requiring Ferrari to discontinue manufacturing a light blue overgrip product.  Niksich Testimony; Joint Exhibit 90.

22. Ferrari has also voluntarily discontinued production of light blue grip products in the past in response to Unique's out-of-court demands. Testimony of Ronald Carr (hereinafter "Carr Testimony")[2].

23. Following the filing of the Complaint in this action, Ferrari's "Smart Grip Overgrip" grip tape, as referenced in Paragraph 19 of the Complaint, is no longer manufactured, sold, offered for sale, or marketed in light blue in the United States.

24. Unique has also engaged in preventative policing measures by obtaining agreements from the Taiwanese suppliers that manufacture the product for many sporting goods manufacturers, such that these Taiwanese companies

---

[2] The anticipated testimony from Mr. Carr is derived solely from his prior declarations and deposition testimony.

promised not to even supply U.S. companies with light blue grip tape.

Niksich Testimony; Joint Exhibit 63.

C.  **Gamma's Blue Gauze Tape**

25.  Like Unique, Ferrari manufactures and markets specialty sporting goods

accessories, including overgrip products for tennis racquets.  Carr

Testimony.

26.  One of Ferrari's products is a light blue gauze tape.  Carr Testimony.

27.  Although Gauze tape has a woven appearance and grip tape does not, the

two products are competitive in that they are both used to wrap a tennis

racquet for the purpose of moisture absorption.  Testimony of Harry Ferrari

(hereinafter "Ferrari Testimony")[3].

D.  **Likelihood of Confusion**

---

[3] The anticipated testimony from Mr. Ferrari is derived solely from his prior declarations and deposition testimony.

28. Unique has a highly distinctive mark.  This finding is based on the 33-year use of the mark, the 2001 registration of the mark, the popularity of the product with professional tennis players, the high sales of the product, and evidence that people in the tennis industry identify the mark with Unique's product. Niksich Testimony; Joint physical exhibits 1, 186, 205, 206.

29. The two marks are both a shade of light blue.  Joint Physical Exhibits 77 and 83.  The trademarks are therefore similar.

30. Both Tourna Grip and the gauze tape serve the same purpose, and a racquet wrapped in gauze tape looks similar to the grip of a racquet wrapped in Tourna Grip.  Joint Physical Exhibits 77 and 83.  The products are therefore similar.

31. The similarity of the sales methods of Unique and Ferrari cannot be overstated.  Both companies sell their products in sporting goods stores, the sporting goods section of mass merchandise stores, and through the internet. Niksich Testimony; Carr Testimony.

32. The advertising methods of the companies are also identical.  Both Ferrari and Unique advertise their products in identical channels of marketing, including sporting goods catalogs, the Internet, and tennis industry magazines like "Tennis."  Niksich Testimony; Ferrari Testimony.

33. There is some evidence that Ferrari's manufacture and marketing of the light blue gauze tape was done with the intent to misappropriate Unique's goodwill.  This litigation marks the second lawsuit, and the second failed attempt at settlement, wherein Unique has file an action in court to stop Ferrari from using Unique's light blue trademark. Niksich Testimony; Joint Exhibit 90.

34. Unique has also engaged in extensive out-of-court efforts to stop Ferrari from using light blue on its overgrip products.

35. Although no instances of actual confusion have been reported, a likelihood of confusion exists.  Based on a physical examination of the two products, both as they appear on the shelf, in the package, and wrapped on a racquet, the Court finds that a consumer is likely to purchase Gamma's light blue gauze tape incorrectly presuming that he is purchasing the light blue

overgrip product seen on the racquets of professional tennis players on TV.

Joint Physical Exhibits 77 and 83.

36. The Court's finding is based on a physical examination of the two products. The package of Gamma's gauze tape looks like it could be the source of the tape used to wrap a racquet that was actually wrapped with Tourna Grip.

## PROPOSED CONCLUSIONS OF LAW

37. Under the Lanham Act, trademarks include "any word, name, symbol, or device, or any combination thereof" used by any person "to identify and distinguish his or her goods. . . ." 15 U.S.C. § 1127.

38. A manufacturer may obtain trademark protection for a color mark where it acts as a symbol that distinguishes a firm's goods and identifies its source. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 166-67, 115 S. Ct. 1300, 131 L. Ed. 2d 248 (1995).

39. To be considered a valid trademark, the claimed color must not be functional and must have acquired secondary meaning. *Qualitex*, 514 U.S. at 163, 115 S. Ct. at 1303.

40. As was held in this Court's January 21, 2011, Order, Ferrari has not presented any evidence that the LIGHT BLUE trademark is functional. Accordingly, functionality is not at issue.  Dist. Ct. Dkt. No. 84 at p. 8.

### Secondary Meaning

41. Secondary meaning is the connection in the consumer's mind between the mark and the product's producer." *Gift of Learning Foundation, Inc. v. TGC, Inc.,* 329 F.3d 792, 800 (11th Cir. 2003).

42. To prove secondary meaning, the plaintiff must show that, in the minds of the public, the primary significance of the color LIGHT BLUE is to identify the plaintiff as the source of the grip tape products. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844, 851 n.11, 102 S. Ct. 2182, 2187, 72 L. Ed. 2d 606 (1982).

43. Unique's trademark registration is valid if the LIGHT BLUE trademark had acquired secondary meaning by the time it received a federal trademark registration on February 13, 2001.

44. Consumer surveys are not required to prove secondary meaning. *See Aloe Creme Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970).

45. In the absence of consumer survey evidence, four factors can be considered in determining whether a particular mark has acquired a secondary meaning: (1) the length and manner of its use, (2) the nature and extent of advertising and promotion, (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the trademark and the plaintiff's business, and (4) the extent to which the public actually identifies the trademark with the plaintiff's goods and services. *Gift of Learning Foundation, Inc. v. TGC, Inc.,* 329 F.3d 792, 800 (11th Cir. 2003); *Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1560 (11th Cir. Ga. 1991).

46. Unique has shown that the LIGHT BLUE mark has been in use since 1977, when Tourna Grip racket grip tape was first manufactured in its distinctive

light blue color. Thus, at the time the mark was registered in 2001, the mark already had been in use for twenty-four years.  The Court finds that the length of use favors a finding of secondary meaning in the LIGHT BLUE mark.

47. Unique has also shown that in 1999, more than 50 million light blue Tourna Grip products had been sold, with cumulative sales of more than $40 million.  Also in 1999, Tourna Grip was being used by the numerous professional male tennis players, including Pete Sampras and Andre Agassi. Thus, the Court finds that the length of use favors a finding of secondary meaning in the LIGHT BLUE mark.

48. The evidence shows that by 1999, Unique's LIGHT BLUE trademark had been heavily advertised.  Unique has provided numerous examples of magazine covers and advertisements from its 1999 USPTO trademark application.  These materials show the LIGHT BLUE trademark, including photographs of celebrity tennis professionals using the tape and ads with specific references to "thin, blue Tourna Grip," "The original blue super absorbent non-slip grip," "the original blue grip," and "Blue Tape."

49. The Court further finds that since at least as early as 1999, Unique has advertised Tourna Grip as "Tourna Grip the Light Blue Grip."

50. More than $3 million was spent in advertising the Tourna Grip blue overgrip tape products between 1977 and 1999.

51. Based on the quantity and nature of advertising presented, the Court determines that the second factor, the nature of Unique's advertising and promotion, as well as the third factor, its efforts to promote a conscious connection in the public's mind between the trademark and the plaintiff's business, both favor a finding of secondary meaning in the LIGHT BLUE mark.

52. Ferrari argues that Gamma has not shown substantially exclusive use of the LIGHT BLUE trademark, and that therefore the fourth factor, the extent to which the public actually identifies the trademark with the plaintiff's goods and services, weighs against a finding of secondary meaning. Ferrari has provided copies of competitor's catalogs showing variations of blue grip tape products as evidence that Unique has not enjoyed substantially exclusive use.

53. However, it is well-established that third parties' *de minimis* use of a trademark does not preclude that mark's distinctiveness.   Pursuant to 15 U.S.C. § 1052(f), distinctiveness requires "proof of *substantially* exclusive and continuous use" of a mark for five years. (emphasis provided).

54. "The five years of use does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim."  Trademark Manual of Examining Procedure, § 1212.05(b); *see also Unique Sports Prods., Inc. v. Babolat VS*, 403 F. Supp. 2d 1229, 1239 (N.D. Ga. 2005).

55. The Court finds that the only other use uses of the color LIGHT BLUE for grip tape products prior to Unique's 2001 registration were inconsequential or infringing.

56. In regards to the licensed Head product, the Court finds that this third-party use is inconsequential.  The Head product, Agassi Pro Team Grip, is primarily an international product with U.S. sales constituting an annual average of less than 1% of Tourna Grip's U.S. sales, the packaging of

Agassi Pro Team Grip states that it is "made by Tourna Grip," and Unique

controls all aspects of the Agassi Pro Team Grip products.

57. In regards to the remaining third-party alleged uses of infringing light blue

grip tape, Ferrari has produced nothing but poor-quality catalogs in an

attempt to show that it and other companies sold light blue grip tape

products prior to 2001.  However, Ferrari has not produced any physical

evidence of the existence of competing light blue grip tape products, and the

Court therefore cannot confirm the actual color of these products.  Ferrari

has also failed to produce any evidence of a single sale of these products,

and the Court therefore must conclude that such sales were nonexistent or

inconsequential.

58. The Court finds that Unique has dutifully policed its LIGHT BLUE mark,

and that any third-party use of the mark was quickly stopped.  Specifically,

Unique has produced evidence that it rapidly addressed potential

infringements by Babolat USA, Golden Set, Prince, Alpha, Forten

Corporation, Wilson, ProKennex, Volkl Sport America, Easton Sports,

Gosen Racquet Strings, Kirschbaum Sportartikel, Klipper USA,

Sportmaster, Yonex, and Head/Penn.

16

59. Unique has also obtained agreements from the Taiwanese suppliers that manufacture the product for many sporting goods manufacturers, such that these Taiwanese companies promised not to even supply U.S. companies with light blue grip tape.

60. The Court finds that Unique has provided sufficient evidence to show that it enjoyed substantially exclusive use of the LIGHT BLUE mark from 1977 until its federal registration date in 2001.  Ferrari's evidence fails to show anything more than inconsequential uses by Head and possible *de minimus* infringement, which is insufficient to show lack of substantially exclusive use.

61. The Court finds that all secondary meaning factors weight in favor of finding secondary meaning.  Accordingly, Unique has shown met its burden to show that the LIGHT BLUE trademark has acquired secondary meaning by February 13, 2001.

62. Unique has also provided current advertisements and television clips showing ongoing satisfaction of the secondary meaning factors.

Accordingly, the Court further finds that the trademark has continued to have secondary meaning up to the present day.

## VALIDITY OF TRADEMARK REGSITRATION

63. Because the LIGHT BLUE trademark is not functional, and because it acquired secondary meaning prior to its registration, the Court holds that the LIGHT BLUE trademark registration is valid and enforceable. Unique Sports Prods., Inc. v. Babolat VS, 403 F. Supp. 2d 1229, 1234 (N.D. Ga. 2005) (for a color to be a "a valid trademark, the claimed color must not be functional and must have acquired secondary meaning.").

## LIKELIHOOD OF CONFUSION

64. Under § 32(a) of the Lanham Act, liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114.

65. Thus, to prevail on a trademark infringement claim the plaintiff must demonstrate that (1) its mark has priority, (2) the defendants used their mark in commerce, and (3) the defendants' mark is likely to cause consumer

confusion. *See Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

66. Here, no factual dispute exists that Unique's LIGHT BLUE trademark has priority over Ferrari's use of the mark, and that Ferrari uses the color light blue in commerce on its gauze tape product.  Accordingly, the remaining question of fact is whether Ferrari's use of the color light blue causes a likelihood of confusion with Unique's LIGHT BLUE trademark.

67. In the Eleventh Circuit, likelihood of confusion is assessed by examining seven factors: (1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public. *Welding Servs. v. Forman*, 509 F.3d 1351, 1361 (11th Cir.  2007) *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984).

68. The likelihood of confusion is a question of fact. *Jellibeans, Inc. v. Skating Clubs*, 716 F.2d 833, 840 n.16 (11th Cir. 1983).

69. In this circuit, the court is required to consider each of the seven factors. *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1207 (11th Cir. 2004).

70. The more the public recognizes the plaintiff's mark, the more protection it deserves and will receive. *See Frehling Enterprises*, 192 F.3d at 1335 (11th Cir. 1999). Similarly, the "less that third parties use [the] mark, the stronger it is, and the more protection it deserves." *Id.* at 1336.

## STRENGTH OF THE PLAINTIFF'S MARK

71. The use of the color light blue on tennis grip tape is arbitrary.

72. The LIGHT BLUE trademark has been in existence since 1977, and has been federally registered for ten years.

73. Unique's light blue racket grip tape is used by numerous famous professional tennis players, including Pete Sampras, Andre Agassi, James Blake, Venus Williams, and Maria Sharipova.

74. Unique has also presented evidence that its "Tourna-Grip" product is the best selling racket grip tape in the United States.

75.  The Court therefore finds that Unique has demonstrated that its LIGHT BLUE mark is a strong trademark, and this factor weighs in favor of a finding of a likelihood of confusion.

## SIMILARITY OF THE MARKS

76. To determine the similarity of the marks, the court considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used.  *Frehling Enterprises*, 192 F.3d at 1337.

77. "[W]here the goods and services are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case

of dissimilar products." *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 890 F. Supp. 1559, 1575 (N.D. Ga. 1994).

78. The Court finds that the LIGHT BLUE mark is used on products that are in direct competition with those of Ferrari.

79. The Court further finds that both products are a similar shade of blue.

80. Accordingly, the Court holds that this factor favors Unique.

## SIMILARITY BETWEEN THE GOODS OR SERVICES OFFERED, SIMILARITY OF THE ACTUAL SALES METHODS, and SIMILARITY OF ADVERTISING METHODS

81. Ferrari conceded in its Summary Judgment Brief that the third, fourth, and fifth factors favor Unique.

82. The Court finds that the parties sell similar products, in that the products at issue here are both grip products for sporting racquets.

83. The parties employ similar advertising strategies, as both Gamma and Unique advertise their products in identical channels of marketing, including sporting goods catalogs, the Internet, and tennis industry magazines like "Tennis."

84. Unique and Ferrari both sell their products in sporting goods stores, the sporting goods section of mass merchandise stores, and through the internet. Thus, the parties' sales methods are virtually identical.

85. Accordingly, the Court holds that the third, fourth, and fifth factors favor a finding of a likelihood of confusion.

INTENT OF THE INFRINGER TO MISAPPROPRIATE THE PROPRIETOR'S GOODWILL

86. Prior knowledge of the plaintiff's mark may infer an intent to derive benefit from the plaintiff's reputation. *See Frehling Enterprises*, 192 F.3d at 1340.

87. Unique has filed a prior lawsuit against Ferrari alleging trademark infringement of Unique's LIGHT BLUE mark. In the settlement agreement, Ferrari agreed to discontinue sales of its light blue grip product.

88. The Court finds that Ferrari has repeatedly attempted to derive goodwill from Plaintiff's LIGHT BLUE mark, and that the sixth factor weighs in favor of finding a likelihood of confusion.

## ACTUAL CONFUSION

89. It is "well-settled" that evidence of actual confusion is not necessary to finding a likelihood of confusion. *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525 (11th Cir. 1985); *see also Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999) ("[A] plaintiff is not required to provide evidence of actual confusion in order to prove likelihood of confusion.").

90. The Court finds that even though Unique has not presented evidence of actual confusion, that factors one through six all weigh in favor of a finding of a likelihood of confusion.  Accordingly the Court finds that Ferrari's use of the color light blue on its grip products is likely to cause confusion as to the source of the product.

## INITIAL INTEREST CONFUSION

91. The Court also finds that Ferrari's use of the color light blue on its grip products is likely to cause initial interest confusion.

92. Use of a confusingly similar imitation of another's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may still be an infringement. This is known as initial-interest confusion. *N. Am. Med. Corp. v. Axiom Worldwide, Inc*., 522 F.3d 1211, 1221 (11th Cir. 2008); *Nissan Motor Co. v. Nissan Computer Co*., 378 F.3d 1002, 1018 (9th Cir. 2004) (explaining initial interest confusion "occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion"); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 296 (3d Cir. 2001) (noting that "under the [initial interest confusion] doctrine, courts look to factors such as product relatedness and the level of care exercised by customers to determine whether initial interest confusion exists."); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006) (explaining "[i]nitial interest confusion results when a consumer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or similar mark"); *PACAAR*

*Inc. v. Telescan Techs.*, 319 F.3d 243, 252 (6th Cir. 2003)( "initial interest

confusion is recognized as an infringement under the Lanham Act"); *Mobil*

*Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987)

(holding that if a purchaser is misled by his "initial interest," "[s]uch initial

confusion works a sufficient trademark injury").

93. The Court finds that the similarity of the products, the similarity of the

marks, and the identical channels of marketing and sales create a likelihood

of initial interest confusion.  A consumer in a typical sports goods store is

likely to be initially misled by Ferrari's light blue grip products.


CONCLUSION


94.  The Court finds that Ferrari's use of the color light blue on its grip product

infringed Unique's federally registered trademark in the color LIGHT

BLUE.


95. The Court further holds that such infringement also constitutes false

designation of origin and violations of the Georgia Deceptive Trade

Practices Act.  *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep,*

*Dodge, LLC*, 605 F.3d 931, 935 n.16 (11th Cir. 2010) ("To prevail on a false designation of origin claim under 15 U.S.C. § 1125(a) a plaintiff must establish that the defendant adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods. The factors relevant to establishing this are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114"); *Energy Four, Inc. v. Dornier Medical Systems, Inc.,* 765 F. Supp. 724,731 (N.D. Ga. 1991) ("The Uniform Deceptive Trade Practices Act involves the same dispositive questions as the Federal Lanham Act").

96. Based on the foregoing, the Court hereby enjoins Ferrari from further infringing use of Unique's LIGHT BLUE trademark.

Dated this 15th day of August, 2011.

Respectfully Submitted,
Counsel for Plaintiff
Unique Sports Products, Inc.

s/W. Scott Creasman
W. Scott Creasman
Todd E. Jones
Jason R. Curles

Amanda Hyland
Taylor English Duma LLP
1600 Parkwood Circle,
Suite 400
Atlanta, Georgia 30339
Telephone:   (770) 434-6868

**IN THE UNTIED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNIQUE SPORTS PRODUCTS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 09-CV-660-TWT |
| | : | |
| FERRARI IMPORTING COMPANY | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## <u>CERTIFICATE OF SERVICE</u>

By electronic signature below, I certify that I have electronically filed a copy of the foregoing and understand that notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and that parties may access this filing through the CM/ECF system.

Submitted this 15th day of August, 2011.

Counsel for Plaintiff
Unique Sports Products, Inc.

<u>s/Amanda G. Hyland</u>
Amanda G. Hyland