IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNIQUE SPORTS PRODUCTS,
INC.,

   Plaintiff,

     v.

FERRARI IMPORTING COMPANY
d/b/a GAMMA SPORTS,

   Defendant.

CIVIL ACTION FILE
NO. 1:09-CV-660-TWT

## OPINION & ORDER

### I. Introduction

This is a trademark infringement action. Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following findings of fact and conclusions of law following a non-jury trial conducted from August 15 to August 16, 2011. The Plaintiff submitted its Post Trial Brief and Proposed Findings of Fact and Conclusions of Law on October 3, 2011 [Doc. 132], and the Defendant submitted its Post Trial Brief [Doc. 133] on October 3, 2011.

## II. Findings of Fact

### A. LIGHT BLUE TOURNA GRIP

1.

Unique Sports Products, Inc. ("Unique") manufactures and markets sporting goods accessories, including grip and grip tape products for racket sports. Transcript at 16-17.

2.

Unique manufactures and markets TOURNA GRIP, an overgrip product that wraps around the pre-existing grip of a tennis racket to provide additional cushioning and moisture absorption. Transcript at 17-18; Ex. 210.

3.

Since 1977, TOURNA GRIP has been manufactured, marketed and sold in a LIGHT BLUE color. Transcript at 25-26.

4.

TOURNA GRIP feels smooth. It has a speckled appearance and is very moisture absorbent. Transcript at 88-90.

5.

In 1992, Unique acquired the TOURNA GRIP product line, including its LIGHT BLUE racket grip tape. Transcript at 28-29.

6.

In 1999 when Unique applied for a trademark, TOURNA GRIP was the most successful tennis grip tape product, with over 50% of the market and $40 million in cumulative sales. TOURNA GRIP continues to be the most successful tennis grip tape product. Transcript at 39-40, 383-384, 362-364; Ex. 186.

7.

On February 13, 2001, Unique received a federal trademark registration for the color LIGHT BLUE used for "grip tape for sports rackets." Transcript at 17-18; Ex. 1.

8.

TOURNA GRIP is used by many professional tennis players, including Pete Sampras, Andre Agassi, James Blake, Venus Williams, Maria Sharapova, and the Bryan Brothers. Transcript at 53-54, 383-384; Exs. 100, 186, 205, 206.

9.

Between 1977 and 1999, Unique spent more than $3 million advertising TOURNA GRIP. Unique advertises TOURNA GRIP on television and in tennis magazines. These advertisements emphasize TOURNA GRIP's LIGHT BLUE color. Transcript at 39, 40-45, 53-54.

10.

Unique spends approximately $250,000 per year advertising TOURNA GRIP. Transcript at 40.

11.

Unique has advertised TOURNA GRIP as "the blue Tourna Grip," "The original blue super absorbent non-slip grip," "the original blue grip," "Blue Tape," "the original light blue grip," and "the light blue grip that does not slip." Transcript at 40-45, 53-54; Exs. 186, 206, 208.

12.

Unique also manufactures Agassi Pro Team Grip, which is the same product as TOURNA GRIP. The packaging of Agassi Pro Team Grip states that it is "Made by Tourna Grip." Transcript at 97-100, 376; Exs. 84 and 85.

13.

Agassi Pro Team Grip is primarily an international product. Sales in the United States account for less that 1% of TOURNA GRIP's domestic sales. Transcript at 97-100.

14.

On February 18, 2008, Unique entered into a settlement with Babolat VS ("Babolat") stating that Babolat was prohibited from using twelve Pantone colors representing Unique's LIGHT BLUE mark. See Ex. 193.

B.   Ferrari's Gauze Tape

15.

Ferrari Importing Company ("Ferrari"), markets and sells specialty sporting goods accessories, including grip tape for tennis rackets. Transcript at 222.

16.

Ferrari markets gauze tape in a light blue green color. Transcript at 31-32; Ex. 77.

17.

Ferrari's gauze tape has a rough woven appearance and feel. It does not absorb moisture as well as TOURNA GRIP nor does it provide significant cushioning. The gauze tape is self-adhesive and can be wrapped around a tennis racket grip. Transcript at 32, 88-90; Ex. 77.

18.

Tennis players generally prefer either gauze tape or overgrip tape. There was no evidence introduced at trial that a significant number of tennis players use both. Transcript at 89-90, 230-31, 277.

19.

Both Ferrari and Unique advertise their products in sporting goods catalogs, the internet, and tennis industry magazines. Transcript at 50-54, 262-263.

20.

TOURNA GRIP and Ferrari's gauze tape are sold in sporting goods stores, mass merchandise stores, and through the internet. Transcript at 49-50, 361-362.

### III. Conclusions of Law

A.  Validity of Unique's LIGHT BLUE Trademark

Under the Lanham Act, trademarks include "any word, name, symbol, or device, or any combination thereof" used by any person "to identify and distinguish his or her goods." 15 U.S.C. § 1127. Color constitutes a trademark where it "distinguishes a firm's goods and identifies their source, without serving any other significant function." Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 166 (1995). To be a valid trademark, the color must have secondary meaning and cannot be

functional. Id. at 163. The Court has already found that LIGHT BLUE is not functional [See Doc. 84 at 8]. Thus, the Court will only address secondary meaning.

"Secondary meaning is the connection in the consumer's mind between the mark and the product's producer." Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 800 (11th Cir. 2003). In determining whether a trademark has acquired secondary meaning, the Court considers: "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion, (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the trademark and the plaintiff's business, and (4) the extent to which the public actually identifies the trademark with the plaintiff's goods and services." Unique Sports Prods., Inc. v. Babolat VS, 403 F. Supp. 2d 1229, 1237 (N.D. Ga. 2005). Further, the mark must have acquired secondary meaning before the Defendant adopted it. Gift of Learning Found., 329 F.3d at 800.

Here, the Plaintiff and its predecessor have sold LIGHT BLUE TOURNA GRIP since 1977. Unique has spent $3 million on advertising between 1977 and 1999. Further, those advertisements consistently emphasized TOURNA GRIP's LIGHT BLUE color. Seeking to promote a connection between TOURNA GRIP and the LIGHT BLUE mark, Unique has advertised TOURNA GRIP as "the blue Tourna Grip," "The original blue super absorbent non-slip grip," "the original blue grip,"

"Blue Tape," "the original light blue grip," and "the light blue grip that does not slip." Transcript at 40-45, 53-54; Exs. 186, 206, 208. Numerous professional tennis players endorse TOURNA GRIP, including Pete Sampras, Andre Agassi, James Blake, Venus Williams, Maria Sharapova, and the Bryan Brothers. Transcript at 53-54, 383-384; Exs. 100, 186, 205, 206. Thus, balancing all the factors, LIGHT BLUE TOURNA GRIP has acquired secondary meaning.

Ferrari argues, however, that other companies were marketing LIGHT BLUE grip tape before Unique's mark acquired secondary meaning. A valid trademark requires "*substantially* exclusive and continuous use." 15 U.S.C. § 1052(f)(emphasis added). "The requirement that the plaintiff's use be 'substantially exclusive' makes an allowance for use by others which may be inconsequential or infringing." Babolat, 403 F. Supp. 2d at 1239. Although Ferrari introduced catalogues offering grip tape in various shades of blue, many of these grip tapes were not confusingly similar to TOURNA GRIP. See Exs. 160-167, 169, 175, 210. Further, the Defendant produced no evidence regarding the number of LIGHT BLUE grips sold. See Transcript at 345. Indeed, the only evidence of blue grip tape sales was Ferrari's records that it imported 180 LIGHT BLUE overgrips in 1994. Transcript at 355-358; Ex. 32. Thus, the Court finds that Ferrari's use of LIGHT BLUE was *substantially* exclusive.

The Plaintiff has shown that it has marketed LIGHT BLUE TOURNA GRIP since 1977, that it made considerable efforts to associate the LIGHT BLUE mark with TOURNA GRIP, and that its use of the mark has been *substantially* exclusive. Thus, LIGHT BLUE acquired secondary meaning. For this reason, Unique's LIGHT BLUE trademark is valid.

### B.  Likelihood of Confusion

Under the Lanham Act, trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. "Thus, to prevail, a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." Frehling Enters., Inc. v. International Select Grp., Inc., 192 F.3d 1330, 1335 (11th Cir. 1999). "Likelihood of confusion is assessed by examining seven factors: (1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public." Welding Servs.,

Inc. v. Forman, 509 F.3d 1351, 1360 (11th Cir. 2007). Likelihood of confusion is a question of fact. Jellibeans, Inc. v. Skating Clubs of Ga., Inc., 716 F.2d 833, 840 n.16 (11th Cir. 1983).

Here, LIGHT BLUE is distinctive. As discussed above, the Plaintiff has made considerable efforts to establish a connection between LIGHT BLUE and TOURNA GRIP. This factor weighs in favor of the Plaintiff. Ferrari's gauze tape, however, is not similar to LIGHT BLUE TOURNA GRIP. Although both products are generally light blue, the shades are very distinguishable. Ferrari's gauze tape is almost teal while TOURNA GRIP has a purple hue. See Exs. 77 & 210. Further, gauze tape has a woven appearance and feel. By contrast, TOURNA GRIP is smooth and has a speckled appearance. Thus, the dissimilarity of the marks weighs against finding a likelihood of confusion.

Also, overgrip tape and gauze tape are not similar products. The products are not the kind that the public attributes to a single source. See Frehling, 192 F.3d at 1338. Overgrip products like TOURNA GRIP are much more absorbent than gauze tape. Overgrip wraps are softer, thicker, and provide more cushioning. Further, TOURNA GRIP is specifically designed to absorb moisture. Gauze tape provides a tacky feel but absorbs very little moisture. Finally, while TOURNA GRIP is affixed to the racket handle by a separate piece of tape, gauze is self-adhesive. Even Unique's

president, Gene Niksich, testified that most customers would prefer either gauze or overgrip tape because of their significant differences. See Transcript at 89. Thus, the dissimilarity of the products weighs against finding a likelihood of confusion.

Although the parties' sales and advertisement methods are similar, these factors are not dispositive. Since both TOURNA GRIP and gauze tape are wrapped around tennis grips, it is not surprising that both products are sold and advertised in tennis magazines and retail outlets. The packaging of the products makes it virtually impossible to confuse the source of the product as it is offered for sale. Finally, there is no evidence of actual confusion. Although evidence of actual confusion is not necessary, see E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc., 756 F.2d 1525 (11th Cir. 1985), this factor does not weigh in favor of the Plaintiff. Thus, balancing the seven factors, there is little likelihood of confusion between Ferrari's gauze tape and LIGHT BLUE TOURNA GRIP.[1]

    C.    Initial Interest Confusion

Finally, Ferrari's gauze tape does not cause initial interest confusion. "Initial interest confusion occurs when the defendant uses the plaintiff's trademark 'in a

---

[1] Because the Court finds that there is no likelihood of confusion between Ferrari's gauze tape and TOURNA GRIP, the Court need not address whether Unique's LIGHT BLUE trademark extends beyond Unique's settlement with Babolat specifying Pantone shades. See Ex. 193.

manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion.'" Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1018 (9th Cir. 2004) (quoting Interstellar Starship Services, Ltd. v. Epix, Inc., 304 F.3d 936, 941 (9th Cir. 2002)); see also Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1238 (10th Cir. 2006) ("Initial interest confusion results when a consumer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or a similar mark."). "Product relatedness and level of care exercised by consumers are relevant factors in determining initial interest confusion." Checkpoint Sys., Inc. v. Check Point Software Tech., Inc., 269 F.3d 270, 296 (3rd Cir. 2001).

Although the Eleventh Circuit has not expressly decided whether initial interest confusion establishes Lanham Act liability, see North American Medical Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1222 (11th Cir. 2008), the Court need not decide the question here. As discussed above, TOURNA GRIP and gauze tape are not similar products. Indeed, due to differences in appearance, feel, and performance, consumers generally prefer one or the other. See Transcript at 89-90, 230-231, 277. Thus, there is no initial interest confusion between the Defendant's gauze tape and TOURNA GRIP. For these reasons, Ferrari's gauze tape does not violate Unique's LIGHT BLUE trademark.

## IV. Conclusion

For the reasons set forth above, the Clerk is directed to enter judgment in favor of Unique on Ferrari's affirmative defenses that the Plaintiff's trademark is invalid and unenforceable, and in favor of Ferrari on Unique's claim for infringement.

SO ORDERED, this 27 day of October, 2011.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge